IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| KEN L. DAVIS | § | |
| | § | |
| V. | § | A-08-CA-750-SS |
| | § | |
| MICHAEL J. ASTRUE, COMMISSIONER | § | |
| OF THE SOCIAL SECURITY ADMIN. | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATED MAGISTRATE JUDGE**

TO: THE HONORABLE SAM SPARKS
UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff's Original Complaint seeking reversal of the final decision of the Social Security Administration (Clerk's Doc. No. 4); Plaintiff's Brief in Opposition to the Commissioner's Decision (Clerk's Doc. No. 15); and Defendant's Brief in Support of the Commissioner's Decision (Clerk's Doc. No. 17). Also before the Court is the Social Security record filed in this case (Cited as "Tr."). Plaintiff Ken Davis appeals from the determination that he is not disabled and presents for review four issues: (1) whether proper weight was given to Plaintiff's treating and examining doctors' opinions; (2) whether the Plaintiff's ability to perform the jobs cited was consistent with the medical evidence; (3) whether the ALJ erred in his finding that Mr. Davis is a high school graduate in applying Rule 202.13; and (4) whether the decision of the ALJ is based on the opinion of the vocational expert and consistent with SSR 00-4p. The undersigned submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. GENERAL BACKGROUND**

On July 16, 2006, Ken Davis (hereinafter "Davis" or "Plaintiff") filed an application for supplemental security income under Title XVI of the Social Security Act (the "Act"), alleging

disability beginning May 21, 2001 (Tr. 8, 97). The claim was denied initially on September 27, 2006, and upon reconsideration on February 28, 2007 (Tr. 49, 57). Davis requested a hearing before an Administrative Law Judge ("ALJ"), which was held on January 31, 2008, in Austin, Texas (Tr. 8, 20–44). The ALJ issued an unfavorable decision dated April 3, 2008, finding that Davis was not disabled within the meaning of the Act (Tr. 8–15). The Appeals Council declined Davis's Request for Review by notice on August 28, 2008, making it the final decision of the Commissioner (Tr. 1–3). On October 10, 2008, Davis brought the instant action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying him benefits under the Act.

## II. THE HEARING BEFORE THE ALJ

On January 31, 2008, Administrative Law Judge Roy J. Richardson held a hearing on Davis's application for benefits. Davis testified at the hearing and was represented by his attorney, Mary Ellen Felps (Tr. 20). Ilene Gray, a vocational expert, also appeared and testified at the hearing (Tr. 20, 38–44).

**A.     Plaintiff's Testimony**

Plaintiff Ken Davis was born November 28, 1956, and he was 50 years of age at the time he filed his application for disability benefits (Tr. 23, 14). Davis did not obtain a high school diploma, but he did attend high school until he was in the twelfth grade (Tr. 24). At the hearing, Davis testified that he was unable to work because he does not feel well, he is in pain a lot, and he cannot concentrate (Tr. 24). He further stated that he gets fatigued real easily and he is not able to do much (Tr. 24). In regard to pain, Davis testified that he had pain in his head, his neck, his back, and in his knees (Tr. 25). He also testified that he has trouble with his hands (i.e. numbness and an inability to grip), as well as difficulties walking, and difficulties with his arms and shoulders (Tr. 29–30, 32–33, 35–36).

2

B.  **Vocational Expert's Testimony**

The vocational expert was asked by the ALJ whether an individual with the claimant's age, education, work experience, and residual functional capacity would be able to perform any work in the economy (Tr. 39–41). The vocational expert testified that, given all of these factors, the individual would be able to perform the requirements of occupations such as assembler of small products, hardware assembler, and semi-conductor package sealer (Tr. 39–40).[1] The vocational expert then testified that there are approximately 162,000 assembler of small products jobs in the national economy (and approximately 13,000 of these jobs in the Texas economy), approximately 40,000 hardware assembler jobs in the national economy (and approximately 3,000 of these jobs in the Texas economy), and approximately 110,000 jobs as a semi-conductor package sealer in the national economy (and about 10,000 of these jobs in the Texas economy) (Tr. 39–40).

### III.  FINDINGS OF ADMINISTRATIVE LAW JUDGE

The ALJ found that Davis has the following severe impairments: atrophied left upper extremity, neck/shoulder pain, arthralgias, hepatitis C, and depression (Tr. 10). The ALJ then found that Davis does not have an impairment or combination of impairments that meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 10). After careful consideration of the entire record, the ALJ found that Davis had the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently. The ALJ further found that

---

[1] The vocational expert was originally given a hypothetical that did not place significant limitations on the use of Davis's left arm. Based on that hypothetical, the vocational expert testified that Davis could perform occupations such as assembler of small products, hardware assembler, and routing clerk in the clerical area. After the ALJ altered the hypothetical to place more significant limitations regarding Davis's left arm, the vocational expert substituted the semi-conductor package sealer position for the routing clerk position. Tr. 40. The Court notes that the ALJ's decision included the routing clerk position as a job Davis could perform, despite the RFC finding that Davis could only use his left arm as an "assist." Tr. 11, 15. This appears to be in error. However, given the other jobs that Davis could perform, this error would be harmless and not grounds for remand.

Davis could use his left non-dominant arm only as an assist, and that he would need to avoid pushing, pulling, or performing fine manipulations with his left arm, as well as avoid climbing and balancing. Additionally, the ALJ found that Davis is limited to only occasionally stooping, kneeling, crouching, crawling, pushing, pulling, and driving. With respect to mental limitations, the ALJ found that Davis was able to understand, remember, and carry out routine step instructions, and respond appropriately to supervisors and co-workers in jobs that do not require independent decision making. Finally, the ALJ found that Davis has the mental capacity to perform work where interpersonal contact is only incidental to the work performed (Tr. 11–12). After considering Davis's age, education, work experience, and residual functional capacity, the ALJ found that he was capable of performing other jobs that exist in significant numbers in the national economy (Tr. 14–15). Accordingly, the ALJ found that Davis was not disabled as defined in the Act (Tr. 15).

## IV. ISSUES BEFORE THE COURT

Davis contends that the ALJ's decision is not supported by substantial evidence and is not based upon the proper legal standards. Specifically, Davis argues that (1) proper weight was not given to his treating and examining doctors' opinions; (2) the ALJ's findings as to what jobs Davis could perform is inconsistent with the medical evidence; (3) the ALJ erred in his finding that Davis is a high school graduate in applying Rule 202.13; and (4) the ALJ's decision is not consistent with the opinion of the vocational expert nor with SSR 00-4p.

## V. STANDARD OF REVIEW

In Social Security disability appeals, the limited role of the reviewing court, as dictated by 42 U.S.C. § 405(g), is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standard. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.

4

1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *James v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Courts weigh four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). However, the reviewing court cannot re-weigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Martinez*, 64 F.3d at 174. If supported by substantial evidence, the Commissioner's findings are conclusive and are to be affirmed. *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988).

## VI. ANALYSIS

**A.    Did the decision fail to give proper weight to Davis's treating and examining doctors' opinions?**

Under this issue, Davis asserts that the ALJ failed to give proper weight to his treating and examining doctors' opinions in determining his residual functional capacity ("RFC"). Specifically, Davis complains that the opinions of his treating doctor, Dr. Molnar, and the opinions of an examining doctor, Dr. Benbow, were rejected for improper reasons (or for no good reason at all), and, therefore, the opinions were not given proper consideration in determining Davis's RFC. After reviewing the evidence in the record, the Court believes that the ALJ committed no error in assigning

the weight he did to these doctors' opinions. Moreover, the Court believes that substantial evidence supports the ALJ's RFC findings.

   1.   Dr. Molnar

Davis argues that the ALJ's RFC finding was contrary to the opinions of his treating physician, Dr. Molnar, and he complains that the ALJ did not properly analyze Dr. Molnar's opinions before rejecting them. Davis argues that the ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. Sec. 404.1527(d) and 416.927(d). *See Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

In his brief, Davis asserts that the ALJ "rejected the opinion of the treating doctor, Dr. Molnar, for the reason that Mr. Davis had seen Dr. Molnar with a 3 month interval between visits." Pl. Brief, at 7. Davis then goes on to say, "The only reasons given for failing to accept the more limiting RFC given by Dr. Molnar is that the ALJ thinks Dr. Cochran's report is more correct." *Id.* at 8. Having reviewed the record, the undersigned disagrees with Davis's characterization of what the ALJ said and did.[2]

Contrary to Davis's assertion, the ALJ did not summarily reject Dr. Molnar's opinions without explanation, nor did the ALJ reject Dr. Molnar's opinions for the reasons Davis stated in his

---

[2]For example, with regard to Davis's claim that the ALJ rejected Dr. Molnar's opinion because "Davis had seen Dr. Molnar with a 3 month interval between visits," this is plainly not what the ALJ did, nor was it even what he said. Rather, the ALJ stated, "The claimant acknowledged he does not see his treating physician, Dr. Molnar, on a regular basis, and was last examined by him 2 to 3 months before the hearing." Tr. 12. And this does not mean, as Davis asserts, that Dr. Molnar's opinions were ignored because there were 3 month intervals between Davis's visits with Dr. Molnar. The statement was made while discussing what Davis had alleged at the hearing; the ALJ did not say that this was *why* he was rejecting portions of Dr. Molnar's opinions. Rather, as will be discussed, the ALJ rejected many of his opinions because they were unrelated to Dr. Molnar's treatment of Davis.

6

brief. In fact, the ALJ actually accepted parts of Dr. Molnar's opinions, and he rejected others where he had good cause to do so. For instance, the ALJ found that the lifting/carrying/handling/manipulating/pushing/pulling restrictions proposed by Dr. Molnar were "persuasive," and the ALJ for the most part incorporated these restrictions into his RFC finding (Tr. 13).[3] The ALJ indicated that these opinions were persuasive because Dr. Molnar treated Davis for neck/shoulder/left arm pain. The ALJ then went on to explain that he "did not assign significant weight to the standing/walking/sitting or environmental restrictions proposed by Dr. Molnar, as he acknowledged, and the evidence reveals he has not treated the claimant for impairments that would support these restrictions." *Id.* The ALJ further noted that several of the limitations proposed in Dr. Molnar's report were "based on fatigue secondary to hepatitis C, an impairment for which the claimant has not received regular medical care." *Id.* Thus, the ALJ incorporated those opinions that were related to Dr. Molnar's treatment of Davis, and properly rejected those that were not.

Moreover, the ALJ, in determining Davis's RFC, relied on the opinions of Dr. Cochran, a specialist in occupation and disability medicine, who provided a detailed, reliable, and objective account of Davis's physical capacities (Tr. 13, 199–200). Therefore, the ALJ relied on trustworthy evidence from an examining physician controverting the claimant's treating specialist. An ALJ is not required to exhaustively rebut a treating doctor's opinion in these circumstances. *Newton*, 209 F.3d at 453. Thus, the undersigned does not believe the ALJ committed any error with regard to Dr. Molnar's opinions.

---

[3]The ALJ noted, however, that this finding gives Davis every benefit of the doubt, considering "his intermittent pursuit of medical care, his limited need for medication, and his demonstrated abilities on physical examination in August 2006." Tr. 13.

7

### 2. Dr. Benbow

Davis next complains that the ALJ erred in his findings of mental limitations, and in support of this argument, Davis points to the mental evaluation performed by Dr. Benbow. It appears that Davis is arguing that the mental limitations Dr. Benbow found were greater than the mental limitations the ALJ accepted in his RFC, and this requires remand.

After reviewing the record, the undersigned believes that the ALJ actually used Dr. Benbow's opinions to support the mental limitations he found, and further believes that substantial evidence supports the ALJ's determination regarding Davis's mental limitations. In the ALJ's opinion, the ALJ noted that, in addition to physical restrictions, an evaluation by Dr. Benbow revealed that Davis had symptoms consistent with an adjustment disorder with depression, chronic, mild to moderate (Tr. 13). However, the ALJ continued by stating:

> The claimant's demonstrated abilities, which included intact thought processes/content, no psychomotor abnormalities, and no memory deficits, and Dr. Benbow's assessment of the claimant's social, occupational, and psychological functioning (Global Assessment of Functioning or GAF) of 60 to 65, which is indicative of only slight functional limitations, do not suggest symptomatology that would preclude competitive work. Considering this evidence, and the fact the claimant did not regularly report or exhibit depressive symptoms on the few occasions he was examined in follow-up, the undersigned is convinced at most the claimant had moderate limitations in social functioning and concentration/persistence/pace secondary to depression. Despite this symptomatology, the claimant could understand, remember, and carry out routine step instructions, respond appropriately to supervisors and coworkers in jobs that do not require independent decision making, and perform work where interpersonal contact is only incidental to work performed.

Tr. 13–14. This indicates that Dr. Benbow's opinions, rather than being ignored or disregarded, were used to support the ALJ's findings regarding mental limitations.

The undersigned believes that substantial evidence supports that ALJ's findings regarding mental limitations. Such evidence includes the opinion of Dr. Benbow that Davis has a GAF of 60 to 65, the fact that Davis has demonstrated intact thought processes/content, no psychomotor

abnormalities, and no memory deficits, and the fact that Davis did not regularly report or exhibit depressive symptoms on the few occasions he was examined in follow-up (Tr. 13–14, 206–207). Therefore, the undersigned does not believe the ALJ committed error with regard to Davis's mental limitations.

B.   **Are the ALJ's findings as to what jobs Davis can perform inconsistent with the medical evidence?**

Under this issue, Davis again takes issue with the ALJ's RFC and how he feels it is inconsistent with Dr. Molnar's opinions. This argument would only have merit if the ALJ accepted Dr. Molnar's opinions in their entirety, but he did not. As discussed above, the ALJ accepted some of Dr. Molnar's opinions, while he rejected others as either unsupported or inconsistent with Dr. Cochran's opinions. The undersigned believes the ALJ properly exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Accordingly, the undersigned does not believe this issue is grounds for remand.

C.   **Did the ALJ err in his finding that Davis was a high school graduate in applying Rule 202.13?[4]**

Davis next argues that the ALJ erred in finding that Davis had "at least a high school education." Because Davis did not graduate from high school, but rather stopped attending in the twelfth grade, Davis believes that pursuant to the grids,[5] and specifically Rule 201.14, he should be

---

[4]The Court notes that the ALJ did not apply Rule 202.13, but rather relied on vocational expert testimony in reaching his unfavorable decision at step five (Tr. 14–15).

[5]The so-called grids are a series of tables broken into separate rules "which classif[y] a claimant as disabled or not disabled, based on the claimant's physical capacity, age, education, and work experience." *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a) ("Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled.").

9

found disabled. Davis bases his conclusion that Rule 201.14 applies on the following facts: Davis was 50 years of age, he does not have a high school diploma, and he is limited to less than sedentary work. However, the ALJ did not find that Davis was limited to less than sedentary work, as Davis states in his brief. Rather, the ALJ found that Davis could perform light work, but that his ability to perform all or substantially all of the requirements of light work has been impeded by additional limitations (Tr. 14). Therefore, Rule 201.14 would not apply, as all of the criteria of a particular rule must be met before the rule directs a conclusion as to whether the individual is or is not disabled.[6]

Moreover, Davis admits that he has non-exertional impairments, but he nevertheless argues that, based on the grid, he should be found disabled. The grids, however, are designed for cases in which claimants are restricted entirely or mostly from exertional or strength limitations. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e). Such limitations are those that affect a claimant's "ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing and pulling)." 20 C.F.R. § 404.1569a(b). Nonexertional limitations, on the other hand, relate to such restrictions as climbing, balancing, stooping, kneeling, crouching, or work environment, among others. 20 C.F.R. § 404.1569a(c). In this case, when determining Davis's RFC, the ALJ noted a number of nonexertional limitations, such as climbing, balancing, stooping, kneeling, crouching, and crawling, in addition to exertional limitations. For this reason as well, use of the grids was not mandated.

In sum, because Davis's RFC did not coincide with the full range of either sedentary or light work, and because he suffered from a combination of exertional and nonexertional limitations, the

---

[6]When claimants fall between exertional levels, the ALJ must give consideration to the grids or use them as a framework. *See* SSR 83-10, 1983 WL 31251, at *1. In addition, consultation with a vocational expert may be helpful or even required. *See* SSR 83-12, 1983 WL 31253, at *2; *see also Books v. Chater*, 91 F.3d 972, 980–81 (7th Cir. 1996) (where the claimant could perform the full range of light work tasks subject to certain sitting and standing restrictions, it was appropriate for the ALJ to procure testimony from a vocational expert and find the claimant not disabled).

grids were not mandated. In such situations, it is appropriate to consult with a vocational expert, which is precisely what the ALJ did. *See Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000) ("When the grids do not completely describe the claimant's abilities and limitations, such as when the claimant has both exertional and nonexertional limitations . . . , the grids are inapplicable and the ALJ must take the testimony of a [vocational expert]."). Accordingly, this issue is not grounds for remand.

D.    **Is the ALJ's decision inconsistent with the opinion of the vocational expert or with SSR 00-4p?**[7]

In his final issue for review, Davis asserts that, for the jobs the ALJ said Davis could perform, the description of the job duties are not consistent with the RFC given, such that the case should be remanded for proper treatment of the vocational issues.

As already noted above, the undersigned believes that the routing clerk position was likely included in error, given that this position was listed by the vocational expert in response to a hypothetical that did not place significant limitations on Davis's left arm, but the ALJ ended up including these limitations in his RFC. *See supra* note 1. As for the other positions, Davis includes in his brief purported job descriptions of the occupations the ALJ said he could perform. Davis then argues that each job description has some requirement that is beyond Davis's residual functional capacity. However, not a single one of the job descriptions Davis offers matches up with the DOT

---

[7]From what is argued in the brief, it does not appear that SSR 00-4p has any application to this case. This policy interpretation ruling deals with situations when there is an apparent unresolved conflict between vocational expert ("VE") testimony and the Dictionary of Occupational Titles ("DOT"), and in such situations, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE testimony to support a determination or decision about whether the claimant is disabled. *See* SSR 00-4p. What Davis is really arguing is that, for the jobs the ALJ stated he could perform, the descriptions of the job duties contained in the DOT are inconsistent with the RFC given by the ALJ. If the undersigned is incorrect, and Davis believes there is an apparent unresolved conflict between the VE testimony and the DOT, he fails to show what this conflict is. In fact, not once in this section of the brief does Davis even mention the VE or her testimony.

code offered by the vocational expert. *Compare* Tr. 39–40 (listing DOT codes 222.587-038; 706.684-030; 762.687-046; and 726.687-042), *with* Pl. Brief, at 12–14 (listing codes 222.687-022; 706.684-022; 739.687-030; and 701.687-010). In other words, Davis is trying to show the job descriptions are inconsistent with his RFC by offering job descriptions unrelated to the actual jobs the ALJ said he could perform. Because Davis fails to show how the jobs the ALJ found he could perform were inconsistent with his RFC, and because it appears the jobs listed are indeed consistent with his RFC, the undersigned does not believe this issue is grounds for remand.

## VII. RECOMMENDATION

Based upon the foregoing, the undersigned finds that the Commissioner's decision is supported by substantial evidence and correctly applies the relevant legal standards. Accordingly, the undersigned Magistrate Judge **RECOMMENDS** that the District Judge **AFFIRM** the decision of the Commissioner in this case and **ENTER JUDGMENT** in favor of the Defendant.

## VIII. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153, 106 S. Ct. 466,

472-74 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 23rd day of October, 2009.

                            /s/ Andrew W. Austin
                            ANDREW W. AUSTIN
                            UNITED STATES MAGISTRATE JUDGE